NO. 07-04-0046-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

FEBRUARY 17, 2005

_____

CIPRIANO GONZALEZ LEGARDA, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 242ND DISTRICT COURT OF HALE COUNTY;

NO. B14888-0303; HON. ED SELF, PRESIDING

_____

Before QUINN and REAVIS, JJ., and BOYD, S.J.[1]

In this appeal, appellant Cipriano Gonzalez Legarda seeks reversal of his state jail felony conviction of possession of cocaine and the court-assessed sentence of two years jail time and a $2,000 fine. The sentence was probated under community supervision for a period of three years with the condition that he serve 60 days confinement in the Hale County jail.

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2004-2005).

In pursuing his appeal, he presents two issues for our decision. Those issues are: 1) whether the trial court reversibly erred in denying his timely request for mistrial after the State's detective testified that he had already suspected appellant of drug trafficking, and 2) whether the evidence is legally and factually sufficient to support the conviction because there was no in-court identification of appellant as the one in possession of the controlled substance. For reasons we later express, we affirm the judgment of the trial court.

The nature of appellant's challenge requires us to review the pertinent evidence. The State's evidence was that Hale County Reserve Deputy Ruben Ramirez arrested appellant for an unrelated offense on January 30, 2003. As he did so, he performed a "pat-down" search for weapons, handcuffed appellant, and placed him in a patrol car. Ramirez averred that a "pat-down" search was only external unless the officer feels something like a weapon at which time he could remove the object. Ramirez testified that appellant never changed clothes at the time of the arrest and that no one put anything in appellant's pocket.

Appellant was transported to the Hale County Sheriff's Office and appellant was released to Hale County jailers Dustin Aven and Greg Gonzales. In the course of the book-in process, they obtained appellant's name, social security number, and fingerprints. He was asked to take everything out of his pockets and, as he did so, a clear plastic bag containing a white powdery substance fell out of appellant's pocket.

Lupe Canales, a former Hale County deputy sheriff, testified that he was on duty and present when Ramirez arrested appellant. He averred that neither he nor Deputy Ramirez put anything in appellant's pockets, that no one else had any opportunity to do so, and that

2

appellant did not change clothes that night. Hale County jailer Greg Gonzales testified that he was on duty and assisted in booking appellant. He said that he asked appellant to empty his pockets and, as appellant did so, a little plastic container fell out of appellant's left front pants pocket. Hale County jailer Dustin Aven testified that he picked the plastic baggie off the floor and handed it to jailer Gonzales. He also identified appellant in the courtroom as the person brought into the jail on that night.

Ramiro Sanchez testified that he was the narcotics investigator for the Plainview Police Department and was sometimes assigned to work with the South Plains Regional Narcotics Task Force. He averred that the primary part of his daily job duties involved narcotics activity. He went to the jail to "field test" the substance and determined it was cocaine. He also said that the cocaine found at the jail was in an amount that could have been missed in a pat-down search such as that conducted at the time of appellant's arrest. He added that it was not unusual for people to sometimes drop contraband on the ground as they emptied their pockets. His determination as to the substance being cocaine was later confirmed by the testimony of DPS criminalist Scott Williams.

Appellant's wife, Deanna, was called by the defense. She said that Deputy Canales and another officer came to appellant's house on the night in question as appellant was outside dressed in sweat pants. As they arrested appellant, she said, she saw them put handcuffs on him. She averred they searched him by sticking their hands in his pockets with Deputy Canales first, and "the other one, he took everything from his pocket, and he had his keys and change or wallet and put it on top of the [sheriff's] car. . . ."

3

Deanna also testified that she had called the police because she and appellant had been arguing and appellant had "pushed" her son Hector. She denied telling the officer that appellant had hit her on the head and said the officer would be lying if he said he went out on a domestic call and arrested appellant for assaulting her.

The State recalled Deputy Ramirez, the other officer present at the time in question. Ramirez denied that either of the officers put their hands in appellant's pockets and stated that appellant never emptied his pockets. He also identified a written statement by Deanna in which she stated that appellant had struck her on the head with his fist. Deputy Canales was recalled and denied that either of the officers had put their hands in appellant's pockets or that appellant had taken anything out of his pockets at the time. Canales also averred that he had known Deanna for some 15 years and that she had a bad reputation.

Detective Sanchez was then recalled by the State and, in the colloquy giving rise to appellant's first issue, stated that after he had been at the Hale County jail, he went back to appellant's residence. When queried why he went back, he responded, "In my investigations, I had already suspected Mr. Legarda of narcotic trafficking. . . . " At that point, appellant objected on the basis that Sanchez referenced an extraneous offense. The State responded that appellant had opened the door to that testimony by implying there was some "inappropriate" reason for Sanchez' trip to the residence. The objection was then sustained, and the jury was also instructed to disregard the question and the response. The motion for mistrial was overruled.

4

A trial court's denial of a motion for mistrial is reviewed under an abuse of discretion standard. *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000). A mistrial is only proper for errors that are highly prejudicial and incurable, that is, an error so prejudicial that "expenditure of further time and expense would be wasteful and futile. " *Id.* In *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000), the court reiterated the rule that a prompt instruction to disregard will cure error associated with an improper question and answer and that a mistrial should only be granted when the answer is clearly prejudicial and is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors. *See also Hernandez v. State,* 805 S.W.2d 409, 414 (Tex. Crim. App. 1990).

Appellant further supports his argument that a mistrial should have been granted by pointing out the colloquy following the trial court's ruling in which the State, without objection, queried Sanchez as to whether it was common to follow up on an investigation when an individual had been found in possession of a narcotic and that was why he returned to appellant's house. He also refers to the portions of the State's closing argument in which the prosecutor argued that this was a simple case because the dope was in appellant's pocket and the only witnesses testifying to the contrary had the motive to say something that did not make sense to obtain a different outcome. He then reasons that the argument, when taken in conjunction with Sanchez' reference to his suspicions, was a calculated attempt to arouse prejudice in the minds of the jurors in order to convict appellant on evidence not directed solely to the crime charged.

5

We disagree. Viewed in its context, the passing reference to the officer's prior suspicions was not so prejudicial that the prompt jury instruction to disregard was not sufficient to remove any reversible taint. This is particularly true in view of the fact that no other reference to the prior suspicions of the officer was made. Moreover, we do not think the portions of the State's argument to which appellant referred were more than permissible references to the State's view of the evidence. Appellant's first issue is overruled.

As we have noted, in his second issue, appellant questions whether the evidence is legally and factually sufficient to support the conviction because there was no in-court identification of him as the one in possession of the controlled substance. In presenting that argument, he says that the only evidence of identity was presented through jailer Aven, "who testified solely that Appellant was in the courtroom and was the person brought to jail the night of January 30, 2003." He then argues appellant was "not located in the courtroom by Jailer Aven or anyone else, and from the record there is no way to ascertain who Aven was referring to at the time he answered," and there is no testimony identifying appellant as the one accused of possessing the contraband on the night in question. Thus, because this identification was a fundamental element of the State's case, he contends the evidence is not sufficient to sustain his conviction. Because of this underlying argument, we consider it sufficient to question both the legal as well as the factual sufficiency of the evidence to support the conviction.

The standards governing our consideration of these contentions are axiomatic. In reviewing the legal sufficiency of evidence the question is whether, viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found all

6

the essential elements of the offense charged beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 849 660 (1979). In considering a factual insufficiency claim, the reviewing court asks whether a neutral review of the evidence, both for and against the jury verdict, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *See Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). Identity can be proven either by direct or circumstantial evidence. *Oliver v. State*, 613 S.W.2d 270, 274 (Tex. Crim. App. 1979).

In supporting his argument, appellant cites *United States v. Hawkins*, 658 F.2d 279 (5th Cir. 1981) for the proposition that an uncertain in-court identification is insufficient if it is the only evidence. In considering the applicability of that proposition to this case, we note that in *Hawkins,* the court commented that although the witness in question was "somewhat less than unequivocal," the witness' description of the defendant and his testimony about the defendant's involvement "were more than sufficient to support the jury's verdict." *Id.* at 289. We also note that in cases such as *Bickems v. State,* 708 S.W.2d 541 (Tex. App.--Dallas 1986, no pet.), the court determined that other evidence, including the witness' positive identification of that appellant as the culprit, taken together with the circumstantial evidence that placed him in the area wearing similar clothing to those the victim had described his assailant as wearing at the time, was sufficient to support the conviction. *Id.* at 543.

In this case, jailer Aven was not only asked if he saw appellant in the courtroom, he was asked if he was the person brought into jail that night. He also testified that during the booking-in process at the jail, he and the other jailer took appellant's name, his social security number, and his date of birth. Additionally, there was the testimony we recited above about the arrest of appellant, his transportation to the jail, and the reference to the contraband falling out of his pocket. Under the record, the evidence was amply sufficient, both legally and factually, to support the verdict of the jury. Appellant's second issue is overruled.

In sum, both of appellant's issues are overruled and the judgment of the trial court is affirmed.

John T. Boyd
Senior Justice

Do not publish.

8