Affirmed and Memorandum Opinion filed December 2, 2010.

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00914-CR

___________________

 

Jeffery Allen Quinn, Appellant

 

V.

 

THE State of Texas , Appellee



 



 

On
Appeal from the 232nd District Court

Harris County,
Texas



Trial Court Cause No. 1157169

 



 

 

MEMORANDUM OPINION

            A jury convicted appellant, Jeffery Allen Quinn, of
aggravated robbery.  The jury sentenced appellant to five years’ confinement in
the Institutional Division of the Texas Department of Criminal Justice. 
Appellant raises two issues on appeal.  In his first issue, he argues the
evidence was not factually sufficient to support the conviction.  In his second
issue, appellant contends the trial court erred by refusing to grant him a
mistrial.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On the morning of February 20, 2008, Eduardo Najera
and Charles Rosok were working at a Sprint cellular telephone store[1] on Veterans
Memorial Drive in North Houston. (3 RR 17-18)  Both men were checking their
email when four young African-American men entered the store.  (3 RR 105) 
Rosok testified that three of the men had t-shirts over their faces and three
carried pistols.  (3 RR 105)  

Najera testified that one of the men came up to him
and brandished a gun near his face while the other men walked past him towards
the back of the store.  (3 RR 26-27)  The man holding the weapon on Najera did
not cover his face, but did put the hood of his shirt on top of his head.  (3
RR 28)  Najera testified he and the man engaged in a verbal exchange during
which he was looking at the man’s face.  (3 RR 29)  The four men stole merchandise,
Najera’s jewelry and wallet, and Rosok’s personal cell phones, wallet, personal
keys, and the store’s key.  (3 RR 39, 110)

On March 5, 2008, Deputy Ronald Fleming of the Harris
County Sherriff’s department met with Najera and Rosok.  Fleming privately
showed each witness a photo array for identification of potential  suspects. 
(3 RR 79)  Najera identified appellant as the man who held him at gunpoint.
Najera circled his choice and initialed the photo.  (3 RR 48)  At trial, Najera
testified that he had no doubts that the man in the photo was the one with the
gun.  (3 RR 48)  Najera, however, was unable to make a live identification of appellant
in the courtroom.  (3 RR 50)  Rosok was unable to identify any person in the
photo array. (3 RR 115)

Appellant’s defense rested on a case of mistaken
identity.  Appellant did not testify in his own defense, but did call
witnesses.  Sandra Kinnerson testified that her son, Clinton Broadway, was
appellant’s friend for a number of years.  (3 RR 125)  She stated that
appellant frequently spent the night in her home during February 2008.  (3 RR
126)  Kinnerson testified she could not be sure he slept over at her home on
February 19, 2008, and did not know where he was the morning of February 20, 2008.

Broadway testified appellant slept at his home on
February 19, 2008, and stayed with Broadway throughout the next day, February
20, 2008.  (3 RR 135)  Broadway testified that he remembered because he and
appellant went to a pawn shop on February 20, 2008, at approximately 4:00 p.m.
to pawn Broadway’s Play Station Portable.  He stated they pawned the item
because they needed money for gasoline.  (3 RR 136-137)  He testified that
neither he nor appellant had any money prior to pawning the Play Station.  (3
RR 138)

The State successfully argued that because appellant
put on a mistaken identity defense, the State was entitled to provide evidence
of an extraneous offense.  Thus, the jury also heard evidence that on February
28, 2008, a Game Stop store in North Houston was also robbed by four young
African-American men.  (4 RR 1)  The manager, Kenneth Dubree, identified
appellant as one of the robbers when presented with a photo array after the
robbery.  (4 RR 23) Dubree testified that appellant had a hood over his head,
but his face was visible.  (4 RR 13-14)   Dubree also identified appellant in
court.  (4 RR 13)

Dubree also identified another person, Elliott
Baptiste, in the photo array.  (4 RR 41)  Sergeant Shane McCoy of the Harris
County Sherriff’s department testified that he filed charges against both
appellant and Baptiste based upon Dubree’s identifications.  (4 RR 41)  Sergeant
McCoy further testified Baptiste confessed to the Game Stop robbery.  (4 RR
41)  Appellant objected to the testimony regarding Baptiste’s confession on the
grounds that it was non-responsive to the question asked.  The trial court
sustained appellant’s objection.  (4 RR 41)  The trial court also gave a
limiting instruction, telling the jury to disregard the information about
Baptiste’s confession. (4 RR 41)  Appellant then moved for a mistrial based
upon his relevance objection, which the trial court denied.

DISCUSSION

I.                  
 Was the Evidence Factually
Sufficient?

Appellant argues the State’s evidence is so weak that
the verdict was manifestly unjust.  Appellant believes the evidence is
inherently weak because:  (1) Najera’s photo array identification may have been
tainted by the belief that a suspect must be included in a photo array;  (2) neither
Najera nor Rosok could identify appellant in court;  (3) even if appellant
participated in the Game Stop robbery, it does not prove he participated in the
cellular phone store robbery.  He also argues the evidence against him is
outweighed by conflicting evidence that Broadway provided appellant with an
alibi for the entire time of the robbery.  We address each of the sub-issues in
turn.

A.     Standard
of Review

A
majority of the judges of the Texas Court of Criminal Appeals have determined
that “the Jackson v. Virginia legal-sufficiency standard is the only
standard that a reviewing court should apply in determining whether the
evidence is sufficient to support each element of a criminal offense that the
State is required to prove beyond a reasonable doubt.”  Brooks v. State,
No. PD-0210-09, 2010 WL 3894613, at *1 (Tex. Crim. App. Oct. 6, 2010)
(plurality op.).[1] 
Therefore, in this case we will review the evidence under the standard set out
in Jackson v. Virginia, and we do not separately refer to legal or
factual sufficiency.

In a sufficiency review, we view all evidence in the
light most favorable to the verdict and determine whether any rational trier of
fact could have found the essential elements of a crime beyond a reasonable
doubt.  Salinas v. State, 163 S.W.3d 734, 737 (Tex. Crim. App. 2005). 
The jury, as the sole judge of the credibility of the witnesses, is free to
believe or disbelieve all or part of a witness’ testimony.  Jones v. State,
984 S.W.2d 254, 257 (Tex. Crim. App. 1998).  The jury may reasonably infer
facts from the evidence presented, credit the witnesses it chooses to,
disbelieve any or all of the evidence or testimony proffered, and weigh the
evidence as it sees fit.  Sharp v. State, 707 S.W.2d 611, 614 (Tex.
Crim. App. 1986).  Reconciliation of conflicts in the evidence is within the
jury’s discretion and such conflicts alone will not call for reversal if there
is enough credible evidence to support a conviction.  Losada v. State,
721 S.W.2d 305, 309 (Tex. Crim. App. 1986).  An appellate court may not reevaluate
the weight and credibility of the evidence produced at trial and in so doing
substitute its judgment for that of the fact finder.  King v. State, 29
S.W.3d 556, 562 (Tex. Crim. App. 2000).  Inconsistencies in the evidence are
resolved in favor of the verdict.  Curry v. State, 30 S.W.3d 394, 406
(Tex. Crim. App. 2000).  We do not engage in a second evaluation of the weight
and credibility of the evidence, but only ensure the jury reached a rational
decision.  Muniz v. State, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993); Harris
v. State, 164 S.W.3d 775, 784 (Tex. App.—Houston [14th Dist.] 2005, pet.
ref’d.).

B.     Was
Najera’s Photo Array Identification Tainted?

A pretrial identification must be set aside if the
“identification procedure was so impermissibly suggestive as to give rise to a
very substantial likelihood of irreparable misidentification.”  Simmons v.
United States, 390 U.S. 377, 384 (1968); Barley v. State, 906 S.W.2d
27, 32-33 (Tex. Crim. App. 1995).  

This court must apply a two step analysis to
determine if the process was impermissibly suggestive.  Simmons, 390
U.S. at 384; Barley, 906 S.W.2d at 33.  First, we decide if the pretrial
identification procedure was unreasonably suggestive.  Simmons, 390 U.S.
at 384; Barley, 906 S.W.2d at 33.  If so, we must determine if the
procedure created a very substantial likelihood of irreparable
misidentification.  Simmons, 390 U.S. at 384; Barley, 906 S.W.2d
at 33.  The factors to weigh in determining whether there was an impermissibly
suggestive identification procedure are (1) the witness’s opportunity to see
the criminal at the time of the crime; (2) the witness’s degree of attention;
(3) the accuracy of the witness’s prior description of the criminal; (4) the
level of certainty demonstrated by the witness at the time of the
confrontation; (5) the length of time between the crime and the confrontation. 
Neil v. Biggers, 409 U.S. 188, 199 (1972); Jackson v. State, 657
S.W.2d 123, 130 (Tex. Crim. App. 1983).  This is a fact-specific analysis of
each individual case.  Simmons, 390 U.S. at 384.

The defendant bears the burden of showing the
pretrial identification procedure was impermissibly suggestive.  Barley, 906
S.W.2d at 33–34.  Appellant’s brief provides no allegations that the
identification procedure in this case was actually tainted.  Instead, appellant
relies solely on the argument that in any photo array situation, a witness
might believe the suspect is included in the police photo array.  

The court has not found evidence of an impermissibly
suggestive identification in the record.  Najera testified that he looked at an
unobstructed view of appellant’s face for some period of time.  (3 RR 31-33) He
also testified he understood the instructions regarding the photo array,
including that no suspects might be included.  (3 RR 47)  Najera had no doubt
that the person he chose in the photo was the man who held him at gunpoint. (3
RR 48)  Deputy Fleming testified Najera identified only the appellant out of
three separate photo arrays of various potential suspects.  (3 RR 81)  Deputy
Fleming and Najera testified that Deputy Fleming had not influenced the
identification process, and that the other people in the photo array were all
African-American men in street clothing.

Appellant has not met his burden of showing that the
identification process in this case was impermissibly suggestive.  Thus, we
need not reach the issue of whether the procedure irreparably tainted the
identification process.  The portion of appellant’s first issue addressing the
photo array is overruled.

C.    What is
the Probative Value of Najera’s Inability to Identify Appellant in Court, the
Game Stop Manager’s Testimony, and Appellant’s Alibi Witnesses?

Appellant argues Najera’s inability to identify
appellant in court weighs against the factual sufficiency of the evidence supporting
the State’s case, which we will construe as against the legal sufficiency of
the case.   The identity of a defendant can be proven by direct or
circumstantial evidence.  Earls v. State, 707 S.W.2d 82, 85 (Tex. Crim.
App. 1986).  Failure to make a positive in-court identification is not fatal to
the witness’ testimony; the failure goes to the weight and credibility of the
testimony.  Meeks v. State, 897 S.W.2d 950, 955 (Tex. App.—Fort Worth
1995, no pet.)  Najera testified to the entire crime, providing details about
where he was, where the robbers were in relation to him, and a chronology of
events.  He was unable to tell the jury other details, including many
identifying features of the robbers, including height and weight, type of
clothing worn, and whether any of the men had facial hair.  (3 RR 57-59).  Najera
made a positive identification of appellant in the mug shot, which has
probative value even in the absence of an in-court identification.  See
Bickems v. State, 708 S.W.2d 541, 543 (Tex. App.—Dallas 1986, no pet.)
(evidence found sufficient to sustain a conviction when the victim made a
positive photographic identification and circumstantial evidence existed that the
defendant committed the crime, even though victim could not make a positive in-court
identification).  

Similarly, Game Stop manager Kenneth Dubree testified
to the details of the robbery committed at his store.  Photographic evidence from
Game Stop’s surveillance video of the robbery was admitted.  Dubree positively
identified appellant as one of the robbers in both a photo array and in court.
(4 RR 13, 22)  As appellant notes, proof that appellant committed the Game Stop
robbery is not proof that he committed the charged offense.  (AB 10)  The jury
could nonetheless consider the evidence and determine its weight and
credibility in determining a material fact at issue, namely the appellant’s
identity.  Jones, 984 S.W.2d at 257; Lane v. State, 933 S.W.2d
504, 519 (Tex. Crim. App. 1996)  

Sandra Kinnerson testified that appellant often spent
the night at her house, but she could not be sure if appellant spent the night
and day at her home on February 20, 2008. (4 RR 128)  Clinton Broadway provided
appellant with an alibi for the time of the robbery.  (4 RR 136)

In this case, the evidence largely turned on which
witnesses to credit.  The jury is the sole judge
of witness credibility and the weight of the evidence.  Fuentes v. State,
991 S.W.2d 267, 271 (Tex. Crim. App. 1999).  Jurors are also allowed to make
reasonable inferences from facts.  Clewis v. State, 922 S.W.2d 126, 133
(Tex. Crim. App. 1996).  When there is conflicting evidence, this court
“presume[s] the trier of fact resolved any such conflict in favor of the prosecution.” 
Fuentes, 991 S.W.2d at 271.  

Najera’s inability to
identify appellant in court goes only to the weight of his testimony, which is
a factual determination to be made by the jury.  Id.  The same is true
regarding Broadway’s alibi testimony.  Id.  A reasonable jury could have
chosen to believe Najera and discount Broadway’s version of events.  While
Dubree’s testimony does not prove appellant committed the Sprint store robbery,
the jury could have chosen to believe Dubree, which undercuts appellant’s
mistaken identity defense.  Id.  We conclude a reasonable jury could
believe Dubree’s testimony and considered it in light of appellant’s defense.  Based
upon the evidence presented, a reasonable jury could have found appellant was
one of the participants in the Sprint store robbery beyond a reasonable doubt.

Appellant’s issue addressing
sufficiency is overruled.

II.              
Did the Trial Court Err by Refusing to Grant a Mistrial?

To preserve error for appellate review, the party
must make a specific objection and obtain a ruling on the objection.  Broxton
v. State, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995).    The error at trial
must be the same as the error complained of at the appellate level.  Wilson
v. State, 71 S.W.3d 346, 350 (Tex. Crim. App. 2002).  

Appellant claims in his next issue that the trial
court was required to grant a mistrial after Sergeant McCoy stated that
Baptiste confessed to the Game Stop robbery.  Appellant argues in his appeal
that Deputy McCoy’s statement violated the Confrontation Clause of the United  States
 Constitution because appellant had no ability to cross examine Baptiste.  See
U.S. Const. amend. VI; Bruton
v. U.S., 391 U.S. 123 (1968); Lilly v. Virginia, 527 U.S. 116 (1999). 


Appellant, however, did not make this objection at
trial.  Appellant received a running objection to Sergeant McCoy’s testimony
under the Texas Rules of Evidence.  (4 RR 35)  In particular, the running
objections were for relevance, probative value substantially outweighed by
unfair prejudice of the testimony, and using other crimes to prove culpability
in the charged offense.  See Tex. R. Evid. 401, 403, 404(b).  When
Sergeant McCoy referenced Baptiste’s confession, appellant also objected on the
grounds of a non-responsive answer, which the trial court sustained.  (4 RR
37)  Upon motion, the trial court issued a limiting instruction to the jury,
requiring them to disregard Sergeant McCoy’s remark.  (4 RR 41)  None of these
objections implicate the Confrontation Clause.  See U.S. Const. amend. VI.  

The purpose of requiring a trial court objection is
“to give the trial court or the opposing party the opportunity to correct the
error or remove the basis for the objection.”  Martinez v. State, 22
S.W.3d 504, 507 (Tex. Crim. App. 2000).  In this case, the basis for
appellant’s objections was the Texas Rules of Evidence.  Consequently,
appellant did not preserve error because he voiced no complaint based on the
Confrontation Clause.  See, e.g., Reyna v. State, 168 S.W.3d 173, 179
(Tex. Crim. App. 2005) (concluding an objection to a trial court’s refusal to
admit evidence under the Texas Rules of Evidence did not preserve a
Confrontation Clause error); Paredes v. State, 129 S.W.3d 530, 535 (Tex.
Crim. App. 2004) (noting a hearsay objection did not preserve Confrontation
Clause claims). 

Because the Confrontation Clause error was not
preserved at the trial court, we are unable to review appellant’s claim. 
Therefore appellant’s second point of error is overruled.

CONCLUSION

Having considered and overruled both of appellant’s
points of error, we affirm the judgment of the trial court.  

 

 

                                                                                    

                                                                        /s/        John
S. Anderson

                                                                                    Justice

 

 

 

Panel consists of Justices
Anderson, Frost, and Brown.

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1][1] There was testimony that the
store was not actually owned by Sprint, but carried Sprint products or was an
exclusive Sprint dealer.  That testimony is not relevant to the issues
presented in this appeal.





[1] Nonetheless, this does not alter the
constitutional authority of the intermediate courts of appeals to evaluate and
rule on questions of fact.  See Tex.
Const. art. V, § 6(a) (“[T]he decision of [courts of appeals] shall be
conclusive on all questions of fact brought before them on appeal or error”).